UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                Plaintiff,

vs.                                        ORDER

                                         20-MJ-594-MJP-1

MARIA A. RAMOS,

                Defendant.

**Pedersen, M.J.** The matter is before the Court on the government's motion, made on the record orally on April 21, 2020, to detain the defendant, Maria A. Ramos ("Ramos" or "Defendant") pending the resolution of the charges filed against her. The parties proffered information to the Court at a hearing on the record held on April 23, 2020. Defendant appeared by video link from the Monroe County Jail, her appointed counsel, Ann M Burger, Esq., appeared in Court on her behalf, and Sean Eldridge, AUSA, appeared in Court to represent the government. Both sides proceeded by proffer. After reviewing the facts, and applying the law, I find that the conditions proposed by the United States Probation Office, with the additional condition of home detention, can reasonably assure the appearance of Defendant and the safety of the community. Therefore, I order Defendant released on personal recognizance on the conditions outlined below.

## FINDINGS OF FACT

Based on the proffers, as well as the information contained in the affidavit supporting the complaint and the Pretrial Services report, I make the following findings of fact:

1. A criminal complaint was brought before the undersigned on April 21, 2020, charging that on or about April 20, 2020, in the Western District of New York, Defendant violated Title 21, United States Code, Sections 841 (a)(1), (b)(1)(B) and 846 (attempted possession with intent to distribute 500 grams or more of cocaine, a schedule II controlled substance).

2. Defendant faces a minimum of 5 years, and a maximum of 40 years of imprisonment if convicted of the charged offenses.

3. On April 15, 2020, during a review of incoming, mail law enforcement was alerted to a parcel addressed to "MARIA Ramos 778 NORTON ST ROCHESTER NY 14621" and which bore a return address of "HENRY MORERA 1419 BERLYN AV ONTARIO CA 91764". The Priority Mail Express parcel bore United States Postal Service (hereinafter "USPS") tracking number EK634859585US, and was a white in color medium USPS flat rate cardboard box, measuring approximately 13.5" x 12" x 3.5", and weighing approximately 3 pounds (hereinafter the "Subject Parcel"). The mailing was prepaid and had an expected delivery date of April 15, 2020.

4. On April 16, 2020, law enforcement applied for and received a federal search and seizure warrant from the undersigned for the Subject Parcel. That search warrant was executed the same day and revealed that the Subject Parcel contained approximately 1,029 grams of suspected cocaine that was secreted inside a postal box. Law enforcement field tested the suspected cocaine and it tested positive for the presence of cocaine. Based on law enforcement's training and experience, this quantity of cocaine is consistent with an intent to distribute

5. Based upon law enforcement's training and experience, law enforcement knows that illegal narcotics traffickers often utilize techniques to prevent the detection of narcotics that are shipped unlawfully through mail and common carriers by means of falsifying recipient names, telephone numbers, addresses and shipper names. In addition, illegal narcotics traffickers have been known to conceal narcotics inside of other objects to avoid detection by law enforcement officials.

6. On the morning of Friday, April 17, 2020, using USPS systems, law enforcement indicated that the Subject Parcel was out for delivery to 778 Norton Street, Rochester, from the Irondequoit Station Post Office which services the address. At approximately 9:01 a.m., task force officers ("TFO") with the Drug Enforcement Administration ("DEA") began conducting surveillance in the area of 778 Norton Street, Rochester. TFO Jeremy Peterson checked for vehicles in the area that appeared to be on the lookout for the delivery of the Subject Parcel to 778 Norton Street. TFO Peterson observed two vehicles in the immediate area, one of which was occupied and bore New York registration JJR 6351, a gray 2008 Honda Accord. When TFO Peterson ran the New York registration JJR 6351, that registration came back to a red 2005 Ford Escape suburban, registered to Wanda I Lopez-Pereira1 of 24 Murray Street, Rochester. It was evident to TFO Peterson that the registration on the gray 2008 Honda Accord had been transferred from the 2005 Ford Escape suburban. Without knowing the vehicle identification number, TFO Peterson could not determine the registration status of the 2008 Honda Accord. TFO Peterson saw what appeared to be two female occupants of the 2008 Honda Accord.

7. At approximately 9:36 a.m., TFO Peterson saw the 2008 Honda Accord depart the area of 778 Norton Street and at approximately 9:57 a.m., law enforcement utilized USPS systems to indicate that the Subject Parcel had arrived back at the Irondequoit Station Post Office and was "Available for Pickup" and "Addressee Unknown." TFO Peterson maintained surveillance in the area and at approximately 10:06 a.m., TFO Peterson again saw the 2008 Honda Accord return to the area of 778 Norton Street.

8. At approximately 10:39 a.m., TFO Peterson saw the 2008 Honda Accord again depart the area of 778 Norton Street, square the block, and return at approximately 10:41 a.m. to the same area. The 2008 Honda Accord remained in the area until approximately 11:12 a.m., when it departed.

9. At approximately 11:14 a.m., a New York State Police ("NYSP") Trooper driving a marked police unit, in coordination with TFO Peterson, performed a vehicle and traffic stop of the 2008 Honda Accord for the switched registrations violation. The driver of the 2008 Honda Accord was identified as Ramos. There was a passenger in the front seat who was identified as Melanie Lopez and a passenger seated in the rear identified as Jose Arturo Rodriguez-Lopez. The 2008 Honda Accord's vehicle identification number was confirmed to be 1HGCP26848A058993, and the corresponding registration tags for that vehicle had been returned as voluntarily surrendered. The 2008 Honda Accord, according to Department of Motor Vehicle records, was previously registered to Kim Marie Pompa in East Rochester.

10. During the vehicle and traffic stop, Ramos told the NYSP Trooper that she had recently acquired the 2008 Honda Accord and that registration tag JJR 6351 was taken from a vehicle belonging to her mother, Wanda I Lopez-Pereira. Ramos said she had a driver license from Puerto Rico and said she lives at 175 Avenue E, Rochester, New York.

11. On April 20, 2020 at approximately 7:30 a.m., law enforcement officers including those from the DEA, and New York State Police, conducted surveillance at the Irondequoit Post Office. At approximately 10:56 a.m., law enforcement was notified by USPS personnel that Ramos was at the retail counter, had presented her Ohio non-driver identification card and requested the parcel in her name for 778 Norton Street. The Subject Parcel was given to Ramos and she exited from the retail lobby. Ramos was seen by surveillance officers getting into a green 2007 Honda Odyssey van bearing New York registration GMM 1023. A marked New York State Police unit was requested to perform a traffic stop of the van, which took place just after the car exited the post office parking lot. At approximately 11:04 a.m., all three occupants of the van were taken into custody without incident; Ramos was seated in the rear passenger seat, and there were two other individuals in the van.

12. Inside the van, the Subject Parcel box was on the floor, in front of the third row seat in the center of the van. The blue plastic container that previously contained the cocaine (and now contained "sham cocaine") and that was inside the Subject Parcel box was on the floor near the second row driver side seat. The packaging peanuts from the Subject Parcel were also on the floor in the same area as the blue plastic container. The "sham cocaine" that law enforcement placed into the Subject Parcel box was in the rear pocket of the driver's seat, easily accessible to Ramos.

13. At approximately 12:06 p.m., law enforcement interviewed Ramos. After being read her Miranda rights, Ramos agreed to be interviewed. During the interview, Ramos said that she started talking to a guy who went by a username of "I Got One" on the MeetMe app on her phone, but could not provide any other details about the identity of "I Got One." Ramos said she told "I Got One" she needed to make money and that "I Got One" told her to send nude photographs, which Ramos did, and "I Got One" told her he would send her the Subject Parcel in the mail. Ramos said she didn't want her mom to know the Subject Parcel was coming and to ask questions about it, so she provided "I Got One" the address of 778 Norton Street, Rochester. Ramos said she knows "the barber" who lives at that address that she has met a couple of times on the street in passing his house. Ramos said the Subject Parcel was supposed to be delivered the week prior and admitted that on Friday, April 17, 2020, she sat out in front of 778 Norton Street waiting for the Subject parcel, but the Subject Parcel was never delivered. Ramos said that later the same

day she was told by "I Got One" that the Subject Parcel would be available for pickup on Monday and Ramos said she then deleted his MeetMe account. Ramos said she thought "I Got One" was sending her money.

*Background*

Defendant is 26 years old and was born in Caguas, Puerto Rico. Her mother is Katherine Ramos (age 43). Defendant does not know her father. She has three siblings, Rose Colon (age 24), Kate Colon (age 22), and Justin Maldonado (age 19). Her mother, her sister Rose, and her brother Justin reside in Rochester, New York. Her sister Kate resides in Arkansas. Defendant indicates that she has a good relationship with her family.

Defendant moved to Rochester, New York, from Caguas, Puerto Rico three years ago. Defendant has lived at 175 Avenue E in Rochester since November 1, 2019. Prior to that, she lived at 556 Emerson Street with her mother for 7 months, and before that, she lived at 75 Rohr Street for 3 months. Defendant could not recall any prior addresses, despite having traffic violations in Arkansas and possessing a non-driver's ID from Ohio. Prior to her arrest, Defendant lived with her two children, ages 7 and 8. Defendant indicated that she would return to 175 Avenue E if released. However, Derek Torres, an individual who was arrested on April 15, 2020, and charged with Conspiracy to Possess with Intent to Distribute 40 grams or more of fentanyl, heroin, and cocaine (unrelated case, No. 20-MJ-574) also resides at 175 Avenue E with several individuals. Mr. Torres was released on April 15, 2020, with pretrial supervision and a condition that he reside at 175 Avenue E, Rochester, New York. Because of this, if released, the United States Probation Office would include a

condition that Defendant be required to reside with her mother, Katherine Ramos, at her residence located at 556 Emerson Street, Rochester, New York until she receives permission by Pretrial Services to move to a different address. The Court notes that Katherine Ramos and two other family members were present in court during the detention hearing.

Defendant is not in a relationship at this time. She married Willie Banegas (age 27) in May 2018, and they separated in December 2019. Mr. Banegas resides in Ohio, they do not have any children together, and do not have any contact.

Defendant graduated from high school in Caguas, Puerto Rico. She completed a Culinary Arts program at the Office of Adult and Career Educations Services Rochester City School District, on Hart Street in Rochester in February 2018. Defendant does not have a U.S. passport and has never traveled outside of the United States. Defendant indicated that she has been employed at Lidestri in Fairport, New York, since March, 2020. Prior to that, she worked at Flower City Printing for two months. In 2019, she worked in housekeeping at the Red Roof Inn in Gates, New York for one year. At the advice of her counsel, Defendant refused to discuss her assets, but she reported no liabilities. She does not have resources for bail.

Defendant is in good physical and mental health. At the advice of her attorney, Defendant declined to answer any questions regarding substance abuse. According to Defendant's sister, Defendant has used marijuana in the past.

At the advice of her attorney, Defendant declined to answer any questions regarding her criminal history. However, a criminal record check conducted through

the National Crime Information Center (NCIC), state, and local records revealed Defendant has an active warrant in Arkansas. According to the record check, the warrant was issued on February 28, 2017, for failure to appear on charges of "No License" and "Animal Running at Large (two counts)." The charges are from the Fayetteville, Arkansas Police Department and the warrant is extraditable within Arkansas only. The United States Probation Office obtained records demonstrating Defendant's criminal history from the District of Arkansas (Washington County District Court). On August 10, 2016, at age twenty-two (22), Defendant was charged with "No Driver's License," a misdemeanor. However, Defendant failed to appear in court in connection with that charge and a warrant was issued for her arrest. On November 1, 2016, Defendant appears to have been charged again for "No Driver's License," a misdemeanor, to which she pled guilty and paid a $170.00 fine. Finally, on November 21, 2016, Defendant was charged with "Animal Running at Large (severity unknown) (two counts)." Defendant failed to appear for this charge and a warrant was issued.

## STANDARD OF LAW

The government is moving for detention on both risk of flight and dangerousness grounds. For risk of flight, the government bears the burden of showing by a preponderance that no condition or combination of conditions will reasonably assure the defendant's presence in court. For dangerousness, the government bears a higher burden of clear and convincing evidence that no condition

or combination of conditions will reasonably assure the safety of any other person and the community.

***Presumption***

The government is relying on the presumption pursuant to 18 U.S.C. 3142(e)(3)(A), which states:

> (3) Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed—
>
> > (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;

The presumption alone is enough to show that detention is warranted, unless the defendant produces some evidence relating to the "G" factors in 18 U.S.C. § 3161(g). In that case, the presumption drops out, but is still a factor to consider along with the G factors.

A defendant bears the burden of forward with evidence to rebut the presumption, but the burden of persuasion remains on the government. *See United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986) (pertaining to the risk of flight); *see also United States v. Rounds*, 619 Fed. App'x 40 (2d Cir. 2015) (summary order) (applying presumption to both risk of flight and dangerousness).

***G factors***

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person

and the community, the Court is required to consider the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

## CONCLUSIONS OF LAW

Based upon my findings of fact I make the following conclusions of law. With regard to the first (g) factor—the nature and circumstance of the offense charged, Defendant is charged with violating Title 21, United States Code, Sections 841 (a)(1), (b)(1)(B) and 846 (attempted possession with intent to distribute 500 grams or more

9

of cocaine, a schedule II controlled substance). Since the charged offense involves controlled substances, this factor weighs in favor of detention.

With regard to the second (g) factor—the weight of the evidence against the person—as outlined above, based upon law enforcement surveillance and search warrants, it appears that Defendant knowingly received a package, which she believed contained a controlled substance, and which law enforcement determined contained 1,029 grams of suspected cocaine, which weighs in favor of detention.

With regard to the third (g) factor—Defendant appears to have strong ties to the community. She is close with her family that resides in Rochester, New York. Defense counsel proffered that the family residing at Defendant's mother's home at 556 Emerson Street is stable, with plenty of room for Defendant and her two children. Defendant's step-father and brother also reside at that residence. Defense counsel further proffered that Defendant's mother indicated that the family has the ability and interest to provide stability and accountability for Defendant. Further, Defendant's stepfather and brother are employed at Lidestri. Defense counsel indicated that Defendant will still have a job at Lidestri if released and that Lidestri conducts drug testing of its employees. Further, Defendant does not appear to have any addiction issues. In addition, while Defendant does have a pending warrant for her arrest in Arkansas, the offenses for which she was charged were not serious offenses. However, the Court is cognizant that Defendant's failure to appear at court on two separate occasions for minor charges, which resulted in warrants, is troublesome. Defendant has no criminal history related to possessing or attempting

to distribute a controlled substance. Finally, Defendant was not on probation or parole at the time of the instance offense, although she does have an outstanding warrant in Arkansas. In totality, this factor weighs against detention.

With regard to the final (g) factor, the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release, while the charge against Defendant is serious, the Court finds that with the conditions suggested by the United States Probation Office for supervised pre-trial release and the added condition of home detention, Defendant will not be a danger to the community. This factor weighs against detention.

Based upon the forgoing, I find that the evidence proffered does not show by a preponderance that no condition or combination of conditions will reasonably assure Defendant's return to court. While Defendant has been charged with a serious crime and faces a minimum prison sentence of five years and a maximum prison sentence of forty years, she has no significant prior criminal history and has strong ties to the community, with a supportive family willing to provide stability for Defendant.

Based upon my findings of fact and the presumption under 18 U.S.C. § 3142(e)(3)(A), the Court finds that the proffers do not show by clear and convincing evidence that no condition or combinations of conditions will reasonably assure the safety of any person and the community. As required by 18 U.S.C. § 3142(h), the Court imposes the following conditions on Defendant's release:

> 1. Report to the Pretrial Services within 24 hours of release, telephone number (585) 263-6810, and as directed thereafter;

2. Reside with her mother, Katherine Ramos, at 556 Emerson Street, Rochester, New York until given approval by Pretrial Services to move to a different address;

3. Home detention, with electronic monitoring;

4. Avoid all contact with codefendants and defendants in related cases unless approved by Pretrial Services;

5. Submit to a mental health evaluation and/or treatment as approved by Pretrial Services. Defendant shall contribute to the cost of services rendered in an amount to be determined by the probation officer based on ability to pay or availability of third-party payments;

6. Refrain from possessing a firearm, destructive device, or other dangerous weapon;

7. Refrain from any excessive use of alcohol;

8. Refrain from any use or unlawful possession of a narcotic drug and other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner; and/or any other mind-altering substances;

9. Submit to any method of testing required by the pretrial services office or the supervising officer for determining whether Defendant is using a prohibited substance. Such methods may be used with random frequency and include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing, including co-payment;

10. Participate in a program of inpatient or outpatient substance abuse therapy and counseling approved by Pretrial Services. Defendant shall contribute to the cost of services rendered in an amount to be determined by the probation officer based on ability to pay or availability of third-party payments;

11. Refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing or electronic monitoring which is (are) required as a condition(s) of release; and

12. Report within 72 hours, to Pretrial Services any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

Accordingly, I order Defendant released on Personal Recognizance with the forgoing conditions pending trial, *once the U.S. Probation Department has inspected the home and approved it for home detention and monitoring*. The government may, of course, have an exception to this ruling, and may appeal it to the district court.

SO ORDERED.

DATED:   April 27, 2020
         Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge